MIDWEST THEATRES, INC., v. UNEMPLOYMENT COMPENSATION COMMISSION.

1. UNEMPLOYMENT COMPENSATION—SUCCESSORS' LIABILITY FOR CONTRIBUTIONS.

Plaintiffs, as successors in interest of theater business were liable for full amount of assessments for contributions under the unemployment compensation act where the value of the assets involved, according to various documents introduced, were recited to be much more than the assessments involved (Act No. 1, § 15 [g], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 246, Pub. Acts 1943).

2. SAME—FINDING AS TO OWNERSHIP BY PLAINTIFFS' PREDECESSOR.

Finding of referee and appeal board of the unemployment compensation commission that corporation and other legal entities, predecessors of plaintiffs, were owned and controlled by the same persons within the meaning of the unemployment compensation act and therefore liable for contributions *held*, supported by record (Act No. 1, § 15 [g], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 246, Pub. Acts 1943).

3. LIMITATION OF ACTIONS—FRAUDULENT CONCEALMENT—EVIDENCE
   —UNEMPLOYMENT COMPENSATION.

   In proceeding to review assessment of contributions under unemployment compensation act, record supported finding of fraudulent concealment by operators of theater business of identity of ownership of the business notwithstanding due diligence by commission in determining facts, so as to render plaintiffs liable under general statute extending period of limitations for contributions more than three years delinquent (3 Comp. Laws 1929, § 13983; Act No. 1, § 15 [g], [j], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 246, Pub. Acts 1943).

4. SAME—FRAUDULENT CONCEALMENT OF OWNERSHIP—DISCOVERY BY
   UNEMPLOYMENT COMPENSATION.

   Where documents presented to attorney for unemployment compensation commission were such as to induce him to come to wrong conclusion as to succession of ownership, notwithstanding statement made with respect to such ownership at hearing before referee, the later finding out of the true situation when withheld documents presenting true relationship were presented constituted a "discovery" under the statute of limitations (3 Comp. Laws 1929, § 13983; Act No. 1, § 15 [g], [j], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 246, Pub. Acts 1943).

Appeal from Wayne; Callender (Sherman D.), J. Submitted October 18, 1947. (Docket No. 48, Calendar No. 43,202.) Decided April 8, 1947.

Certiorari by Midwest Theatres, Inc., a Michigan corporation, and another against Unemployment Compensation Commission and others to review decision of the Appeal Board of the Michigan Unemployment Compensation Commission affirming assessment for contributions. Order affirmed. Plaintiffs appeal. Affirmed.

*Shapero & Shapero,* for plaintiffs.

*Foss O. Eldred,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Laurence A. Price,* Assistant Attorney General, for defendants.

Reid, J.   This is an appeal from the order and judgment of the circuit court for the county of Wayne, affirming an assessment for contributions levied by defendant Michigan unemployment compensation commission.   Plaintiffs brought certiorari in that court to review the assessment of $2,510.19, with interest thereon, for delinquent contributions of the Advance Theatrical Operation Corporation, plaintiffs having been found by the commission to be the successors of that corporation.   Plaintiffs in their appeal from the decision of the referee did not specifically claim that the contributions were not properly assessed against the predecessor in the business.   The contributions were assessed for the period from October 1, 1937 to July 16, 1938, during which period the Advance Theatrical Operation Corporation was in the ostensible control and operation of the business of five theaters on account of which business the contributions in question were ordered to be made.   The date of the notice of assessment was March 20, 1942.

Section 15 (j) of the unemployment compensation act, Act No. 1, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 347, Pub. Acts 1937, Act No. 364, Pub. Acts 1941 and Act No. 246, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8485-55 [j], Stat. Ann. 1946 Cum. Supp. § 17.515 [j]), prohibits the making of such assessments after three years from the date that the contributions first become due and payable. However, the commission relies upon fraudulent concealment under 3 Comp. Laws 1929, § 13983 (Stat. Ann. § 27.612), to render ineffectual the bar of three-year limitation. Section 13983 provides,

"Sec. 20.   If any person who is liable to any of the actions mentioned in this chapter, shall fraudulently conceal the cause of such action from the knowledge of the person entitled thereto, the action

may be commenced at any time within two years after the person who is entitled to bring the same shall discover that he had such cause of action, although such action would be otherwise barred by the provisions of this chapter.''

Before the period covered by the assessment a corporation called the Advance Theatrical Operation Corporation was organized by Jacob Schreiber and Madgelle Schreiber, his wife, on August 26, 1937. On the face of the documents, in form at least, the Advance Theatrical Operation Corporation was organized to the following purport: five corporations (in practical effect owned and controlled by Jacob and Madgelle Schreiber) owned 15,000 shares of non par capital stock out of a total of 15,010 shares actually issued. All the common stock, 100 shares, was owned by Jack Broder. The common and non par shares had equal voting powers. The said five corporations each had previously been organized by or were in the control of Jacob Schreiber, and each of the five corporations had operational right as to its separate theater on Woodward avenue in Detroit. Documents offered in evidence showed, at least ostensibly, that Jack Broder on October 28, 1937, bought from Jacob Schreiber 15,000 shares of Advance Theatrical Operation Corporation's non par capital stock and right to an additional 7,500 shares of the non par capital stock as assignee of five corporations, holders of the 7,500 shares of non par capital stock, all for $125,000, of which the down payment was $10,000 cash plus Broder's note for $5,000, balance of purchase price on time, but the purchase was subject to Schreiber's option to repurchase such non par stock at any time inside of four years at a price to be fixed by appraisal.

There is some showing in the record that on July 16, 1938, Madgelle Schreiber repossessed the

five theaters and operated them until September 1, 1938.   Broder settled his differences with Jacob Schreiber growing out of the deal between them, by surrendering (for a consideration) to Jacob Schreiber on July 16, 1938, all of Broder's shares of stock in the Advance Theatrical Operation Corporation, and with the exception of two theaters, all his (Broder's) rights to operate the business of the five theaters.   There was evidence to show further that on July 16, 1938, Madgelle Schreiber received an assignment from Gould, receiver for Advance Theatrical Operation Corporation.   On September 19, 1938, Jacob Schreiber and Madgelle Schreiber assigned the business of the five theaters in question to plaintiffs.

The value of the assets involved, according to the purchase agreement with Broder and documents showing the formation and transactions of other corporations, was recited to be much more than the amount of the assessment for contributions in question, so that plaintiffs as successors in the business are liable for the full amount of the assessment. See section 15 (g) of the act (Comp. Laws Supp. 1945, § 8485–55 [g], Stat. Ann. 1946 Cum. Supp. § 17.515 [g]).

The record comprises exhibits offered before the appeal board of books kept by the Schreibers, articles of incorporation of various corporations, reports made to the department, agreements, other documents, and letters and statements of attorneys of record.   The referee, and likewise on appeal the appeal board, found and adjudicated that plaintiffs on September 19, 1938, acquired the organization, trade, business or substantially all of the assets of the Advance Theatrical Operation Corporation and the other legal entities which were owned and controlled by Jacob Schreiber and Madgelle Schreiber,

within the meaning of the act, and, therefore, are liable for tax contributions as provided in section 15 (g) of said act, and the assessment of March 20, 1942, which is the subject matter of the controversy, was affirmed. Such finding is sufficiently supported by the record.

Without reviewing in detail all of the various organizations and agreements respecting the management of the five theaters in question and the corporations which ostensibly were entitled to maintain that management, we would consider that the determination by the circuit court is sufficiently supported by the record, the finding being:

"This court is of the opinion that the appeal board was not in error in holding that the appellants were successors of the Advance Theatrical Operation Corporation, and that the appeal board, in so determining, were supported by the facts and proofs appearing in this record."

We further find that there was a sufficient showing of fraudulent concealment within the meaning of 3 Comp. Laws 1929, § 13983, above cited.

On April 13, 1939, the general counsel of defendant commission considered a petition submitted by the Midwest Theatrical Company (which corporation is similar in name to plaintiff Midwest Theatres, Inc., but is another Schreiber corporation) and made the finding that Midwest Theatrical Company was not the successor of the Advance Theatrical Operation Corporation and could not therefore be liable for the assessment appealed from in this case. However, it appears that at that time the defendant commission did not have in its possession the agreements of September 19, 1938, executed between the plaintiffs and Jacob and Madgelle Schreiber. Upon discovering the actual circum-

stances, some time between February 2, 1942 and March 20, 1942, the commission issued the determination of March 20, 1942, which is drawn in controversy in this appeal.

Plaintiffs rely upon section 15 (j) of the unemployment compensation act, previously cited, as a bar to the assessment in question, and further claim that the provisions of 3 Comp. Laws 1929, § 13983 (Stat. Ann. § 27.612), do not operate to lift the bar of the statute of limitations in section 15 (j) for the claimed reason that concealment cannot be predicated on disclosed facts. However, the record shows that the commission was not at any time, before the inception of the three-year period before it made its assessment, in possession of important and controlling facts respecting the liability for the assessment. From time to time Jacob and Madgelle Schreiber and their successors in the business were making reports and making payments for contributions under the act. A statement had been made on October 28, 1938, which indicated that the plaintiffs were the successors in the business but the documents later exhibited to the commission's attorney for his inspection were not the proper documents that would show the true situation but on the contrary were documents which caused him to come to a different and wrong conclusion. The later finding out of the true situation is discovery within the meaning of the statute, 3 Comp. Laws 1929, § 13983 (Stat. Ann. § 27.612), and such discovery, as we have heretofore noted, occurred less than two years before the assessment in question was made.

The personal liability of plaintiff Raymond Schreiber for the payment of the assessment in question clearly appears from his personal undertakings in connection with the formation on September 19, 1938, of the R. S. Holding Company. By agreements

made on that date Raymond Schreiber individually and the plaintiff corporation, Midwest Theatres, Inc., both became involved in the business as successors to the Advance Theatrical Operation Corporation. During the hearing before the referee, the following occurred:

"*Referee:* On September 1, 1938, you officially got possession of all the theatres?

"*Mr. Shapero* [attorney for plaintiffs]: The Midwest Theatres, Inc., officially got possession. * * * If you want to be technical, Raymond got it until the 18th or 20th when the corporation was formed. Whether or not it was the 20th when the corporation was formed, we admit liability from July 18th, and we will pay every bill."

Plaintiffs claim that concealment by others than those against whom the liability is asserted is not concealment within the meaning of the statute. However, the appeal board could find from the record that the concealment in this case was by those who were in charge of the business and who were dealing with the commission.

Plaintiffs further rely on their claim that ordinary diligence on the part of the commission would have disclosed the true situation. However, the multiplicity of corporations, agreements, assignments, and transfers of apparent management, taken all together, in fact created a situation in which a person of much greater than ordinary diligence would fail to arrive at a correct understanding as to what person or persons would be responsible for the contributions in question. The attorney for the commission seems to have made an unusual effort to find out the truth of the matter and still came to the wrong conclusion because the plaintiffs, who were then in possession and charge of the books and records of the

business, withheld from his inspection the documents that would have disclosed the facts.

The record discloses a sufficient foundation for the making of the assessment. The judgment of the circuit court affirming the action of the appeal board of the defendant commission is affirmed. Costs to defendants.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, and NORTH, JJ., concurred. DETHMERS, J., did not sit.